UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, *EX REL.*, ERIC L. HERYFORD, DISTRICT ATTORNEY, TRINITY COUNTY,<br><br>Plaintiff,<br><br>v.<br><br>DISCOVER FINANCIAL SERVICES, et al.,<br><br>Defendants. | No. 2:16-cv-00468-TLN-EFB<br><br>**ORDER** |

This matter is before the Court on Defendant American Bankers Management Company, Inc.'s Motion to Dismiss the First Amended Complaint (ECF No. 10) and Defendants Discover Financial Services, Discover Bank, and DFS Services, L.L.C.'s Motion to Dismiss the First Amended Complaint (ECF No. 21).

The Court will refer to American Bankers Management Company, Inc. as "American Bankers." The Court will refer to Discover Financial Services, Discover Bank, and DFS Services, L.L.C. as "Discover Defendants."[1] The Court will refer to American Bankers and Discover Defendants collectively as "Defendants." The Court has carefully considered the

---

[1] American Bankers's motion to void illegal contingency-fee agreement (ECF No. 13) and Discover Defendants' motion to disqualify counsel (ECF No. 33) are also pending. These motions will be disposed of separately.

arguments raised by the parties. For the reasons set forth below, American Bankers's Motion to Dismiss the First Amended Complaint is GRANTED. Likewise, Discover Defendants' Motion to Dismiss the First Amended Complaint is GRANTED.

I. **INTRODUCTION**

"This action stems from Defendants' marketing, selling, and administering various fee-based ancillary products and services to its California credit card holders." (First Am. Compl. ("the FAC," ECF No. 5 at ¶ 1.) Plaintiff observes that "[c]ertain types of Defendants' ancillary products purport to pay a California consumer's required minimum monthly payment for a limited period of time under certain triggering circumstances, such as involuntary unemployment, illness, or changes in family status, thereby, preventing the account from becoming delinquent." (ECF No. 5 at ¶ 5.) It is this subset of ancillary products that the FAC defines as "Ancillary Plans" or "Plans." For convenience, the Court will do the same.

This is one of four related cases before this Court ("the Related Cases"), whose case numbers are identified in the accompanying footnote.[2] As readily apparent from the Court's review, the operative complaints in the Related Cases are nearly identical. Each is brought by "Eric Heryford, District Attorney for the County of Trinity, . . . on behalf of the people of the State of California [pursuant to] sections 17204 and 17206 of the [Unfair Competition Law ('UCL')] against Defendants to address their use of unfair and deceptive methods, acts, conduct, and trade practices in connection with the sale of Ancillary Plans . . . ." (ECF No. 5 at ¶ 9.) Each contains a single cause of action "Violation of Cal. Bus. & Prof. Code Section 17200, et seq., [UCL] — Fraudulent, Unlawful and Unfair Business Acts and Practices." (*See, e.g.*, ECF No. 5.) Each seeks a "[d]eclar[ation] that each act of Defendants described in [the operative complaint] constitutes a separate violation of California law[,]" "[i]mpos[ition of] civil penalties . . . for each violation of the UCL," and attorneys' fees, costs, and expenses. (*See, e.g.*, ECF No. 5 at 22.)

"When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district

---
[2] 2:15-cv-02343-TLN-EFB; 2:16-cv-00468-TLN-EFB; 2:16-cv-00469-TLN-EFB; and 2:16-cv-00470-TLN-EFB.

2

court may dismiss the complaint or claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). As discussed in more detail below, the Court concludes that this is such a case. The Ninth Circuit has made clear that dismissal under Rule 9(b) should be with leave to amend unless the district court "determines that the pleading could not possibly be cured by the allegation of other facts." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). As set forth in the conclusion of this Order, Plaintiff will be given the opportunity to file an amended complaint.

The Supreme Court has long recognized that federal district courts have "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Moreover, the Ninth Circuit has repeatedly identified the goals that Rule 9(b) is designed to advance:

> Rule 9(b) serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but also "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."

*Bly-Magee*, 236 F.3d at 1018 (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)).

Accordingly, the Court declines to address the other legal questions raised by the parties at this time, as Plaintiff has patently failed to plead with the requisite particularity. To do otherwise would potentially squander enormous judicial resources resolving complex (and arguably novel) questions where nothing in Plaintiff's submissions give the Court any assurances that this is not a "fishing expedition for the 'discovery of unknown wrongs'" of the precise sort that Rule 9(b) is designed to smoke out. *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1092 (9th Cir. 2004) (quoting *Bly-Magee*, 236 F.3d at 1018). If Plaintiff files an amended complaint complying with this Order, Defendants are free to renew their other arguments in an appropriate motion.

///

**II.     ANALYSIS**

In the Court's view, the most orderly and efficient way to proceed will be to first discuss Rule 9(b)'s heightened pleading standard in some detail. This will be followed by those factual allegations necessary to determine whether the sole cause of action, i.e., the entire complaint, is grounded in fraud, notwithstanding that fraud is not an essential element of that cause of action. Finally, the Court will explain its conclusion that the entire complaint is grounded in fraud and its factual allegations are not pled with the particularity necessary to avoid dismissal.

A. Rule 9(b)'s Heightened Pleading Standard

"It is well-settled that the Federal Rules of Civil Procedure apply in federal court, irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (internal quotation marks omitted). Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Before proceeding the Court would note that two of the cases discussed prominently in this section were decided prior to the 2007 amendment to Rule 9(b): *In re GlenFed Sec. Litig.* ("*GlenFed*"), 42 F.3d 1541 (9th Cir.1994) (en banc), and *Vess*. Prior to its amendment, Rule 9(b) read as follows: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b) (2007) (superseded by 2007 amendments) ("the prior version of Rule 9(b)").

Because examination of the text of Rule 9(b) is central to the analysis of these cases, the Court will make three points before proceeding. First, Rule 9(b) was "amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules." Fed. R. Civ. P. 9, advisory comm. notes (2007) ("the 2007 ACN"). As the 2007 ACN makes clear, the changes to the wording of Rule 9(b) were "intended to be stylistic only." Second, the Court concludes that the change from "averments of

4

fraud" to "alleging fraud" worked no substantive change. *See In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 198 F. Supp. 3d 1183, 1192 n.16 (D. Or. 2016) (reaching the same conclusion citing Black's Law Dictionary (9th ed. 2009) for the proposition that "[a]n 'averment' is a positive declaration or affirmation of fact; an assertion or allegation in a pleading is an averment."). Third, as demonstrated below, the Court has cited *GlenFed* and *Vess* for Rule 9(b) propositions that the Ninth Circuit has plainly reaffirmed after the 2007 amendments.

### *i. What the Heightened Pleading Standard Requires*

With this in mind, the Court will turn to *GlenFed*, which fleshed out Rule 9(b)'s requirements at length. This was done, at least in part, in response to Judge Norris's view on the question. Judge Norris contended "that the pleading of detailed evidentiary matter is unwarranted by the strictures of Rule 9(b) and inconsistent with the basic principles of notice pleading." *GlenFed*, 42 F.3d at 1556 (Norris, J., concurring). The en banc majority squarely rejected this view. Its reasons for doing so warrant careful consideration here.

The en banc majority observed "Rule 9(b) would clearly be superfluous if its only function were to ensure that defendants are provided with that degree of notice which is already required by Rule 8(a)." *Id*. at 1547. "But Rule 9(b) clearly imposes an *additional* obligation on plaintiffs: the statement of the claim must *also* aver with particularity the circumstances constituting the fraud." *Id*. (emphasis in original). "Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud." *Id*. (emphasis in original). "Rule 9(b) requires particularity as to the circumstances of the fraud — this requires pleading facts that by any definition *are* 'evidentiary': time, place, persons, statements made, explanation of why or how such statements are false or misleading." *Id*. at 1548 n.7 (emphasis in original). As the Ninth Circuit explained, "[t]he time, place, and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not 'constitute' fraud." *Id*. at 1547–48. "To allege fraud with particularity, a plaintiff must set forth *more* than the neutral facts necessary to identify the transaction." *Id*. at 1548 (emphasis in original). "In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading." *Id*.

5

More recently, the en banc majority's formulation has been succinctly synthesized as follows: "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted).

Before identifying when Rule 9(b)'s heightened pleading standard is triggered, the Court will make two additional points about what Rule 9(b) requires. First, "[i]n the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)). Second, the Ninth Circuit has "explained that allegations of fraud based on information and belief usually do not satisfy the particularity requirements under rule 9(b)." *Moore*, 885 F.2d at 540. Where an exception to that general rule applies, "a plaintiff who makes allegations on information and belief must state the factual basis for the belief." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

### ii. When the Heightened Pleading Standard is Triggered

The Court will now explain when Rule 9(b)'s heighted pleading standard is triggered in the first place. By triggered, the Court means when allegations in a pleading must satisfy Rule 9(b)'s heightened pleading standard. The Court will focus primarily on when factual allegations of fraud must be pled with particularity irrespective of whether fraud is an essential element of a particular claim in the complaint.

As the Ninth Circuit explained in *Vess*, "[t]he text of Rule 9(b) requires only that in 'all *averments of fraud* . . ., the circumstances constituting fraud . . . shall be stated with particularity." *Vess*, 317 F.3d at 1104 (emphasis in original) (quoting the prior version of Rule 9(b)). Further, the Ninth Circuit clarified that "[f]raud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." *Id*. at 1105. Thus, it is not the case that "averments of fraud . . . escape the requirements of [Rule 9(b)]" because a plaintiff makes these allegations in connection with a statutory cause of action that does

not include "fraud [as] an essential element." *Id*. at 1103.

Simply put, "[i]n cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct." *Id*. In such a case, the crucial question from a Rule 9(b) perspective is whether the factual allegations allege only fraudulent conduct or are "allegations of both fraudulent and non-fraudulent conduct . . . made in the complaint." *Id*. at 1105. In the latter case, "if the particular averments of fraud are insufficiently pled under Rule 9(b), a district court should 'disregard' those averments, or 'strip' them from the claim[,]" and "then examine the allegations that remain to determine whether they state a claim." *Id*. In the former case, if the allegations of fraud are insufficiently pled, of course, nothing remains to examine. *See id*. at 1103. That is, "[i]n some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim." *Id*. "In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Id*. at 1103–04. "When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." *Id*. at 1107.

For the avoidance of doubt, the Ninth Circuit made abundantly clear in *Kearns* that the foregoing analysis from *Vess* remains the law after the revision of Rule 9(b)'s text. *Vess* and *Kearns* each dealt with suits brought pursuant to California consumer protection laws, including — in both cases — the UCL. *Vess*, 317 F.3d at 1100; *Kearns*, 567 F.3d at 1122. Each acknowledged that fraud was not an essential element of any of the consumer protection laws at issue. *Vess*, 317 F.3d at 1103; *Kearns*, 567 F.3d at 1125. Both then examined whether the allegations in question were, nevertheless, tantamount to an allegation of fraud, irrespective of whether the word "fraud" was used. *Vess*, 317 F.3d at 1105, 1108; *Kearns*, 567, F.3d at 1124–26.

### iii. *Assuming the Truth of Allegations and Leave to Amend*

"A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6)

for failure to state a claim." *Vess*, 317 F.3d at 1107. Accordingly, as in the Rule 12(b)(6) context, the district court should assume the truth of well-pleaded factual allegations in the Rule 9(b) context. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Likewise, "[a]s with Rule 12(b)(6) dismissals, dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice." *Vess*, 317 F.3d at 1108. That is, "leave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Bly-Magee*, 236 F.3d at 1019 (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)).

### B. Factual Allegations

The following factual allegations are drawn from the operative complaint verbatim, including whether an allegation was made on information and belief:[3]

Upon information and belief, Defendants have offered, marketed, and sold Ancillary Plans to all Discover credit card holders, but most aggressively market these products to vulnerable California consumers who fall into the subprime credit category, who have low credit limits because of impaired credit ratings, or who are looking to establish or re-establish their credit. (ECF No. 5 at ¶ 21.) Defendants' Ancillary Plans have an associated monthly fee, which is separate and distinct from interest and other fees charged by Defendants as part of Discover's extension of credit to the consumer. (ECF No. 5 at ¶ 22.) Each Plan's fee is charged directly to the consumer's credit card account each month, with no separate statement, bill, or invoice provided. (ECF No. 5 at ¶ 22.) Defendants have enrolled large numbers of California card holders and charged them substantial sums of money for enrollment in Ancillary Plans. (ECF No. 5 at ¶ 26.)

Defendants have enrolled consumers in Ancillary Plans using highly deceptive and misleading telemarketing calls, thereby, charging some California consumers without their meaningful consent or understanding that their credit card will be charged for these Plans. (ECF No. 5 at ¶ 28.) Unlike typical marketers or salespersons, Defendants are in the unique position to

---

[3] For reasons not worth belaboring, the Court has decided this approach will facilitate its analysis of whether the Rule 9(b)'s standard is satisfied in this case. As it will serve no practical purpose, the Court declines to present the entire section in block quotation form.

sign up an unsuspecting consumer for these Plans because, as the consumer's credit card company, Defendants already have his or her credit card number(s) on file. (ECF No. 5 at ¶ 28.)

Defendants have sold Ancillary Plans to California consumers through a number of different channels, including but not limited to: (a) Online and direct mail marketing, in which Defendants may ask that consumers "check the box" to initiate the Plan;[4] (b) Telemarketing, where consumers may be asked to press a button on the telephone keypad or verbally agree in order to initiate one or more Plans. (ECF No. 5 at ¶ 29.)

Defendants have a financial motive to enroll as many California consumers as possible into these highly lucrative Ancillary Plan schemes. (ECF No. 5 at ¶ 30.) Additionally, upon information and belief, individual telemarketers have been incentivized to enroll as many card holders as possible because their compensation is either commission-based, determined by the number of card holders they enroll, or based on some other form of evaluation and compensation scheme. (ECF No. 5 at ¶ 30.) Unfair, deceptive, and unconscionable practices are rife in the marketing of Defendants' Ancillary Plans. (ECF No. 5 at ¶ 31.)

Defendants' telemarketers and "customer service" representatives have employed an array of deceptive sales tactics to elicit card holders into communicating some affirmative response, knowing that the card holders do not actually understand that they are supposedly agreeing to purchase one or more Ancillary Plans. (ECF No. 5 at ¶ 32.) Defendants' telemarketers may characterize the call as a courtesy to thank card holders and remind them of the benefits they already get through their credit card agreement, e.g., cash back, airline miles, rewards, etc.; however, they are in fact calling to sell the consumer Ancillary Plans such as Payment Protection. (ECF No. 5 at ¶ 33.) Defendants' customer service representatives may speed through, skip altogether, or alter the text of the information they are required to provide to card holders. (ECF No. 5 at ¶ 34.) Upon information and belief, this is done in an effort to make these disclosures sound like confusing legalese. (ECF No. 5 at ¶ 34.) These telemarketers conclude by saying "OK?" or by asking if the person heard them or understood, knowing that such a question will

---

[4] This marketing method requires an affirmative action by the consumer to enroll, such as checking a box or initialing a monthly statement, other mailer, or online form in a designated space to authorize enrollment. (ECF No. 5 at ¶ 29.)

9

almost always elicit an affirmative response such as "ok" or "yes." (ECF No. 5 at ¶ 34.) Although the card holder believes they have just listened to a courtesy call, Defendants treat any affirmative response elicited by the telemarketer as the card holder's agreement to enroll in Ancillary Plans. (ECF No. 5 at ¶ 34.) So while the card holder may have said "ok" or "yes" at the conclusion of the call, no reasonable person listening to the recordings of these calls would conclude that the card holder was giving his or her knowing, meaningful assent to be charged a monthly fee for enrollment in one or more Plans. (ECF No. 5 at ¶ 34.)

Another tactic Defendants' telemarketers use is to offer to send the card holder a "packet of information" about the Payment Protection Plan. (ECF No. 5 at ¶ 35.) Defendants treat an affirmative response to this inquiry as authorization for paid enrollment, even though the consumer does not understand or believe that he or she has agreed to purchase anything. (ECF No. 5 at ¶ 35.)

Defendants also have utilized the card activation process as another way to wrongfully enroll California consumers. (ECF No. 5 at ¶ 37.) Defendants tell each card holder that he or she must activate the credit card by calling a specific number, provided by Defendants, from the card holder's home phone number. (ECF No. 5 at ¶ 37.) Defendants have taken this opportunity to sell Ancillary Plans, like Payment Protection, to unsuspecting card holders who may believe that the information being provided is related to the card being activated and not an additional, separately charged service. (ECF No. 5 at ¶ 37.)

Many California card holders, accustomed to the legal language and fine print received from a credit card company, like Discover, become immune to the terms and conditions communicated to them; and thus, are particularly susceptible to believing that they are listening to some legal text that must be read to them rather than a "sales pitch." (ECF No. 5 at ¶ 38.) Because of this, a consumer often will reflexively reply "ok" but has no idea that Defendants use this general affirmative response to sign up the consumer for an Ancillary Plan. (ECF No. 5 at ¶ 38.) These consumers have no idea that they have "purchased" an additional product or service like one or more Ancillary Plans. (ECF No. 5 at ¶ 38.)

Upon information and belief, Defendants also have enrolled some card holders in one or

more Ancillary Plans like Payment Protection even if the consumer did not provide an affirmative response during these phone calls. (ECF No. 5 at ¶ 39.) The card holder has been "slammed," that is, involuntarily enrolled in one or more Plans without his or her knowledge or consent. (ECF No. 5 at ¶ 39.) Each of the aforementioned instances is not a typical telemarketing call. (ECF No. 5 at ¶ 40.) Defendants' telemarketer does not need the consumer to provide his or her credit card number or any additional information to purchase the product because the telemarketer is the credit card company. (ECF No. 5 at ¶ 40.) As a result, Defendants can charge the consumer's account when there has been no clear and knowing consent given. (ECF No. 5 at ¶ 40.)

Defendants know that slamming frequently occurs. (ECF No. 5 at ¶ 41.) In fact, the "refund" process itself is set up on the assumption that consumers have been deceived and do not understand that they have been enrolled in Payment Protection. (ECF No. 5 at ¶ 41.) Many card holders have no idea they are enrolled in an Ancillary Plan and do not notice or appreciate the meaning of the line-item charge for the Plan on their credit card bills. (ECF No. 5 at ¶ 42.) This is because the charge is listed as one of the card holder's other monthly purchases. (ECF No. 5 at ¶ 42.) Some card holders have accounts that do not require close inspection of monthly statements. (ECF No. 5 at ¶ 43.) Others simply do not receive a monthly bill and/or may be enrolled in autopay. (ECF No. 5 at ¶ 43.) Consumers may pay this hidden charge month after month for a period of time before becoming aware of it. (ECF No. 5 at ¶ 44.) In addition to the obvious unfairness of enrolling card holders without their valid authorization, Defendants reap an extra windfall because these enrollees will never invoke the supposed benefits of the Plans for which they were charged because they do not even know they may do so. (ECF No. 5 at ¶ 45.)

Discover's marketing for this ancillary product proclaims that "Life happens. Protect your account," and claims that Payment Protection will "[d]efer payments for up to 24 billing periods in the case of involuntary unemployment, hospitalization, disability or other qualifying events . . . ." (ECF No. 5 at ¶ 49.) However, Defendants' "Life happens/Protect your account" tagline misrepresents the true nature of Payment Protection; specifically, that Discover imposes Payment Protection fees on California consumers who did not authorize the charges or who, at the time of

enrollment, were not eligible for the alleged benefits provided by the Plan. (ECF No. 5 at ¶ 49.) Defendants misrepresent that their Ancillary Plans provide protection in a card holder's time of need because Discover's "life happens" advertising campaign fails to disclose and misrepresents that Defendants' Payment Protection Plans have many hidden, variable, and narrow restrictions on use. (ECF No. 5 at ¶ 49.)

Defendants have marketed their Payment Protection Plans to individuals who do not qualify for the purported benefits of the Plans. (ECF No. 5 at ¶ 50.) The numerous qualifications and restrictions set forth in Defendants' fine print expose the advertised "protection" as an illusion. (ECF No. 5 at ¶ 50.) For example, because Defendants do not determine California consumers' eligibility for various options under the Payment Protection Plan before marketing, offering, and selling it to consumers, Defendants knowingly enroll California consumers, and charge them, for a product that the consumers can never use. (ECF No. 5 at ¶ 50.)

Different versions of Discover's Payment Protection Plans contain different terms and conditions, which are complicated and varied. (ECF No. 5 at ¶ 54.) However, each version of the Plan provides for some form of payment suspension upon the occurrence of one of the following defined events: Involuntary Unemployment; Disability; Leave of Absence; Disaster; Hospitalization; Death of a Child, Spouse or Domestic Partner; Celebration Event; or Death Benefit. (ECF No. 5 at ¶ 54.) The restrictions, limitations, and exclusions associated with these benefit-triggering events are expansive and constantly evolving. (ECF No. 5 at ¶ 54.)

Defendants have aggressively marketed and targeted California card holders for enrollment in Payment Protection, even when Defendants have information in their possession indicating that the particular consumer may not be eligible for benefits. (ECF No. 5 at ¶ 56.) Telephone marketing scripts are incomplete, indecipherable, misleading, and use obfuscatory language. (ECF No. 5 at ¶ 57.) Similarly, the written materials or "information" provided to California consumers are incomplete, indecipherable, misleading and contain obfuscatory language. (ECF No. 5 at ¶ 57.) Defendants fail to disclose and/or misrepresent [] exclusions [for Defendants' Ancillary Plans] in their promotion and sale of their Ancillary Plans, including Payment Protection. (ECF No. 5 at ¶ 60.) Although heralded as coverage designed for a

12

consumer's peace of mind and for use when times get tough, Payment Protection is designed to prey on the financially insecure. (ECF No. 5 at ¶ 71.) As a result of their unfair and deceptive marketing practices related to the sale of Payment Protection, Defendants have substantially increased profits. (ECF No. 5 at ¶ 72.)

### C. Application

The Ninth Circuit has made it clear — and it bears repeating here: "[w]hile fraud is not a necessary element of a claim under the . . . UCL," a plaintiff asserting a UCL claim "may nonetheless allege that the defendant engaged in fraudulent conduct." *Kearns*, 567 F.3d at 1125 (citing *Vess*, 317 F.3d at 1103). With this in mind, the Court now turns to whether the substance of Plaintiff's factual allegations are tantamount to allegations of fraud and, if so, whether these allegations fail to satisfy the Rule 9(b) standard. The Court concludes the answer to both questions is "yes." Further, the Court concludes the entirety of the operative complaint's sole cause of action and, therefore, the entire complaint sounds in fraud. Accordingly, the Court will order the dismissal of the operative complaint with leave to amend.

The leading legal dictionary defines "fraud" as "[a] knowing misrepresentation or knowing concealment of a material fact made to induce another to act to his or her detriment." *Fraud*, Black's Law Dictionary (10th ed. 2014) (primary definition). Further, that dictionary refers its readers to its definition of "defraud," which is defined: "To cause injury or loss to (a person or organization) by deceit; to trick (a person or organization) in order to get money." *Defraud*, Black's Law Dictionary (10th ed. 2014). These definitions are consistent with the Supreme Court's statement that "the words 'to defraud' commonly refer 'to wronging one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation of something of value by trick, deceit, chicane or overreaching.'" *McNally v. United States*, 483 U.S. 350, 358 (1987) (quoting *Hammerschmidt v. United States,* 265 U.S. 182, 188 (1924)); *see also United States v. Chao Fan Xu*, 706 F.3d 965, 986 (9th Cir. 2013) ("American law provides a straightforward definition of common fraud as, 'wronging one in his property rights by dishonest methods or schemes, and usually signif[ies] the deprivation of something of value by trick, deceit, chicane or overreaching.'") (quoting *McNally*, 483 U.S. at 359).

13

The Court has already set out Plaintiff's factual allegations at length above. It will serve no practical purpose for the Court to repeat itself. Defendants' alleged conduct can be succinctly summarized. Plaintiff alleges some of the effected credit cardholders were *tricked into paying* for Ancillary Plans *despite never having agreed* to sign up for these Plans in the first place. With respect to the rest of the effected credit cardholders, Plaintiff alleges they were *tricked into actually signing up* for Ancillary Plans and subsequently paid for them. Simply put, the gravamen of the factual allegations in the operative complaint accuse Defendants of defrauding credit cardholders into paying for Ancillary Plans in a variety ways. (*See, e.g.*, ECF No. 5 at ¶ 19 (clarifying that the FAC "addresses the unlawful, unfair, and fraudulent *manner in which credit card customers were enrolled in and charged for the Plans* and the fraudulent *administration associated therewith*, but does *not* challenge *the rate* of the charges *or* Defendants' *ability to set the price* for any Ancillary Plan Defendants have or continue to offer") (emphasis added).) Therefore, the Court finds the entire complaint sounds in fraud.

Plaintiff's allegations of fraud do not satisfy the Rule 9(b) standard. Plaintiff accuses Defendants of defrauding unspecified people, in a variety of ways, in differing circumstances, using unidentified agents, over an unspecified period of time. None of the allegedly fraudulent transactions are identified. Likewise, Plaintiff does not identify any of the victims of Defendants' allegedly fraudulent conduct. Indeed, a reader of the operative complaint would not have the slightest clue — even in general terms — when any of Defendants' alleged misconduct took place. On top of these deficits, Plaintiff makes virtually no effort to distinguish between Defendants' roles in defrauding credit cardholders. Moreover, on a number of occasions Plaintiff's allegations are made on "information and belief." As discussed above, generally this will not satisfy Rule 9(b)'s particularity requirement. Even assuming that an exception to that general rule applies here, Plaintiff has failed to state the factual basis for pleading on information and belief. In short, Plaintiff's failure to plead fraud with required particularity is glaringly obvious. Accordingly, the Court will dismiss the FAC. However, the Court cannot say that Plaintiff will be unable to cure these deficiencies. Consequently, the Court will grant Plaintiff 30 days to file an amended complaint in conformity with this Order.

If Plaintiff elects to file an amended complaint, that complaint should identify with particularity each instance of fraud allegedly perpetrated by Defendants on credit cardholders that are known to Plaintiff. The Court wishes to emphasize that Rule 9(b) is designed to "deter the filing of complaints as a pretext for the discovery of *unknown* wrongs." *Bly-Magee*, 236 F.3d at 1018 (emphasis added); *see also Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) (explaining that Rule 9(b) "requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme.").

### III. CONCLUSION

For the foregoing reasons, American Bankers's Motion to Dismiss the First Amended Complaint (ECF No. 10) is GRANTED. Likewise, Discover Defendants' Motion to Dismiss the First Amended Complaint (ECF No. 21) is GRANTED. Plaintiff is hereby granted 30 days from the date this Order is filed to file an amended complaint in conformity with this Order.

IT IS SO ORDERED.

Dated: June 26, 2018

Troy L. Nunley
United States District Judge